United States District Court
Southern District of Texas
**ENTERED**
October 01, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| **STEVEN S. HILLARY,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:23-CV-00408 |
| | § | |
| **LOVE'S TRAVEL STOPS &** | § | |
| **COUNTRY STORES, INC.,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Steven Hillary was the general manager of the Love's Travel Stop in Edinburg, Texas. Eight years in, according to Hillary, he began hearing comments about his age from Love's employees. He was "getting up there," his district manager said, and maybe didn't "have 'it' anymore." Things also started to change at work. Love's brought in a younger employee as Hillary's assistant manager and increased Hillary's workload. The comments about his age continued.

Three months after this started, Love's fired Hillary. He had corrected a return without the customer present to fix another employee's mistake. Love's claimed that this violated the company's fraud-prevention policy—a policy Hillary had never heard of. Hillary's new assistant manager delivered the news.

Hillary sued Love's in state court for age discrimination and retaliation, and Love's removed the case to federal court. Love's now asks the Court to send this case to

arbitration because Hillary allegedly signed an arbitration agreement as a condition of his employment.

Before the Court is Defendant Love's Travel Stops & Country Stores, Inc.'s Motion to Compel Arbitration and Stay this Proceeding. (Dkt. No. 7). For the reasons below, the Court **GRANTS** Love's' Motion.

**I.    BACKGROUND**[1]

Steven Hillary worked as the general manager of the Love's Travel Stop in Edinburg, Texas, from February 2014 until November 4, 2022—the day Love's fired him. (*See* Dkt. No. 1-3 at 2–4). Eight years into his tenure with Love's, around July 2022, Hillary asked for a raise. (*Id.* at 2). It was denied. (*Id.* at 3). Hillary's pay was capped, his boss said, but he was also "'getting up there in age.'" (*Id.*). Around the same time, Love's brought in a younger employee—a general manager from another store—to serve as the assistant manager at Hillary's location. (*Id.*). Hillary's boss allegedly told him: "'[Y]ou should always be looking behind you, because there's somebody younger coming into this company that can take your job.'" (*Id.*). A month later, Hillary caught COVID and took a week off. (*Id.*). He returned to find his workload increased. (*Id.*). Though he kept up with the added work, his boss remarked that Hillary didn't seem to "'have "it" anymore.'" (*Id.*).

---

[1]    "A motion to compel arbitration is generally treated as a motion to dismiss." *Vine v. PLS Fin. Servs.*, 689 F.App'x 800, 802 (5th Cir. 2017) (citing *Suburban Leisure Ctr., Inc. v. AMF Bowling Prods., Inc.*, 468 F.3d 523, 525 (8th Cir. 2006)). Hillary disputes only that he agreed to the arbitration agreement. (*See* Dkt. No. 11). Accordingly, for purposes of this Motion, the Court accepts Hillary's well-pleaded facts related to the underlying dispute. *Vine*, 689 F.App'x at 802.

Three months later, the assistant manager told Hillary to pack up his things—Love's was firing him. (*Id.*). The reason: After one of Hillary's employees had incorrectly processed a return, Hillary remedied the mistake without the customer present. (*Id.* at 4). For this, Hillary was accused of fraud and of violating Love's' company policies. (*Id.*). Hillary had never heard of a company policy requiring the customer's presence to correct an already-processed return. (*Id.*). But Love's fired him and replaced him with a younger employee. (*Id.*).

Hillary sued Love's in state court for age discrimination and retaliation, (*see id.*), and Love's removed the case to this court, (Dkt. No. 1). Love's now asks the Court to compel Hillary into arbitration. (Dkt. No. 7). According to Love's, Hillary agreed to an arbitration agreement covering this dispute as a condition of his employment. (*Id.* at 1).

## II.  LEGAL STANDARD

"Courts perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). First, they must determine whether the parties agreed to arbitrate the dispute. *Id.* Second, courts consider whether any federal statute or policy renders the claims nonarbitrable. *Id.* Hillary challenges only the first prong. (*See* Dkt. No. 11).[2]

---

[2] The Court is unaware of any federal policy or statute that would render this state-law employment claim nonarbitrable. To the contrary, the Federal Arbitration Act "declares a national policy favoring arbitration of claims that parties contract to settle in that manner." *Preston v. Ferrer*, 552 U.S. 346, 353, 128 S.Ct. 978, 983, 169 L.Ed.2d 917 (2008) (alteration in the original).

At the first step, courts ask two questions: (1) Is there a valid arbitration agreement between the parties? and (2) Does the parties' dispute fall within the scope of that agreement? *Will-Drill Res.*, 352 F.3d at 214. Hillary only focuses on the first. (*See* Dkt. No. 11).

The party moving to compel arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Grant v. Houser*, 469 F.App'x 310, 315 (5th Cir. 2012). In determining whether parties agreed to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995).

Once "competent evidence showing the formation of an agreement to arbitrate has been presented," the party resisting arbitration must "produce *some* contrary evidence to put the matter 'in issue.'" *Gallagher v. Vokey*, 860 F.App'x 354, 358 (5th Cir. 2021) (emphasis in original) (quoting 9 U.S.C. § 4). To put the arbitration agreement "in issue," the resisting party must (1) unequivocally deny that he agreed to arbitrate and (2) produce some evidence to support this assertion, *Gallagher*, 860 F.App'x at 357. Pleadings alone do not satisfy the some-evidence standard. *Id.* at 358. Rather, "[e]vidence presented to compel or resist arbitration must be competent summary judgment evidence." *Intermed Servs. Mgmt. Co., L.P. v. Horseshoe, LLC*, 690 F.Supp.3d 647, 651 (N.D. Tex. 2023), *appeal dismissed*, No. 23-11028, 2024 WL 1484006 (5th Cir. Mar. 26, 2024).

After *Smith v. Spizzirri*, 601 U.S. 472, 144 S. Ct. 1173, 218 L. Ed. 2d 494 (2024), courts no longer have discretion to dismiss a case when one party requests a stay pending arbitration. "When a federal court finds that a dispute is subject to arbitration, and a

4

party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Id.* at 475–76, 144 S.Ct. at 1176.

### III.   DISCUSSION

This matter comes down to the evidence. Love's has supported its claims with competent evidence showing the existence of an arbitration agreement. (Dkt. Nos. 7-1, 7-2, and 12-1). In response, Hillary does not unequivocally deny that he agreed to the arbitration agreement and offers no evidence rebutting Love's'. Love's therefore carries its burden to prove the existence of the arbitration agreement by a preponderance of the evidence. *Grant*, 469 F.App'x at 315. Hillary, on the other hand, fails to put the agreement "in issue" because the some-evidence standard requires both an unequivocal denial and some evidence. *Gallagher*, 860 F.App'x at 357–58.

#### A.   LOVE'S MEETS ITS INITIAL BURDEN

First, Love's must establish the existence of an arbitration agreement by a preponderance of the evidence. *Grant*, 469 F.App'x at 315. Texas's law of contract formation governs. (*See* Dkt. No. 7 at 3); *see First Options of Chi.*, 514 U.S. at 944, 115 S.Ct. at 1924. Here, the only issue is whether Love's can prove that Hillary *agreed* to the arbitration agreement. (*See* Dkt. No. 11 at 2–3)

Texas has adopted the Uniform Electronic Transactions Act, which provides that electronic signatures and records may be used in contract formation. Tex. Bus. & Com. Code § 322.007. An electronic signature "is attributable to a person if it was the act of the person," which "may be shown in any manner." *Id.* § 322.009(a).

5

To prove that Hillary electronically signed an arbitration agreement, Love's offers:

1. a copy of the arbitration agreement, (Dkt. No. 7-1);

2. an image of the click-to-agree prompt overlaid on the agreement as employees see it, (Dkt. No. 7-1);

3. a copy of another document explaining the company's dispute-resolution process (including the arbitration agreement) in plain terms, (Dkt. No. 7-2);

4. an excerpt of a timestamp log showing when Hillary clicked "Agree" on both documents, (*id.*);

5. an affidavit stating that signing the arbitration agreement was mandatory and that Hillary electronically signed the agreement, (Dkt. No. 7-1 at 1–3); and

6. a declaration supporting the authenticity and admissibility of these documents and records, (Dkt. No. 12-1 at 1–2).

In response, Hillary makes two objections: (1) the affidavit is not based on personal knowledge, and (2) the timestamp log excerpt is not admissible in form. (Dkt. No. 11 at 3–5). Both objections lack merit.

First, in his affidavit, Keith Varner says that (1) his duties at Love's include tracking employee documents, (Dkt. No. 7-1 at 1); (2) he had access to those records and could speak to them, (*id.* at 2); and (3) the affidavit was "made upon [his] personal knowledge," (*id.* at 1). Hillary offers no evidence controverting these statements.

Second, evidence at this stage need not be in an admissible form if it can be presented in admissible form at trial. Fed. R. Civ. P. 56(c)(2); *see Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017). In its Reply, Love's offers the full timestamp log and a declaration stating that the log satisfies the requirements of the business-records rule.

6

(*See* Dkt. No. 12-1 at 1); Fed. R. Evid. 803(6). Accordingly, Love's has shown that the content of the timestamp log would be admissible at trial.

Beyond these objections, Hillary offers no evidence controverting the timestamp log or Varner's affidavit—only comments on the weight of Love's' evidence. (Dkt. No. 11 at 3–5). But "[a]rguments in briefs, like allegations in a complaint, are assertions, not evidence." *Collins v. Jackson Pub. Sch. Dist.*, 609 F.App'x 792, 795 (5th Cir. 2015). "[A]n uncontroverted affidavit, even when supplied by a party or a party's employee, can establish the existence of an agreement to arbitrate." *Gallagher*, 860 F.App'x at 358. Love's offers an uncontroverted affidavit, (Dkt. No. 7-1 at 1–3), and a timestamp log showing when Hillary agreed to the arbitration agreement, (Dkt. Nos. 7-2, 12-1). Accordingly, Love's has established the existence of the arbitration agreement by a preponderance of the evidence.

### B. HILLARY CANNOT MEET THE "SOME EVIDENCE" STANDARD

Because "competent evidence showing the formation of an agreement to arbitrate has been presented," Hillary must "produce *some* contrary evidence to put the matter 'in issue.'" *Gallagher*, 860 F.App'x at 357–58 (emphasis in original) (quoting 9 U.S.C. § 4). To satisfy this standard, Hillary must (1) unequivocally deny that he agreed to arbitrate and (2) produce some evidence to support this assertion. *Id.* at 357.

Hillary has done neither. Hillary has not unequivocally denied agreeing to the arbitration agreement. In fact, he has not denied it all. He also has not produced any evidence supporting that assertion. Hillary has not submitted a declaration denying the agreement; his state-court petition does not mention the arbitration agreement, (*see* Dkt.

7

No. 1-3); and his Response—though it attacks the weight of Love's' evidence—does not deny that Hillary agreed to arbitrate, (*see* Dkt. No. 11).  In short, Hillary offers no evidence—much less "some evidence"—that he did not agree to arbitration.

## IV.   CONCLUSION

For the reasons detailed above, the Court **GRANTS** Defendant Love's Travel Stops & Country Stores, Inc.'s Motion to Compel Arbitration and Stay this Proceeding. (Dkt. No. 7).  Accordingly, the Court finds that it is appropriate for this Civil Action to be **STAYED** and **ADMINISTRATIVELY CLOSED** without prejudice to it being reopened upon a motion by any party.  The Court further **ORDERS** that all settings and deadlines previously governing this case are terminated.

It is SO ORDERED.

Signed on September 30, 2024.

*/s/ Drew B. Tipton*
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**